## SETTLEMENT AGREEMENT

### I. PARTIES

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice, Civil Division, and the United States Attorney's Office for the District of Massachusetts, and on behalf of, the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS"), TRICARE Management Activity ("TMA"), the Department of Veterans Affairs ("VA"), and the United States Office of Personnel Management ("OPM") (collectively the "United States"); the Relator Cheryl Eckard as identified in Paragraph C of the Preamble to this Agreement ("Relator"); and GlaxoSmithKline LLC, formerly known as SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, and SB Pharmco, Puerto Rico, Inc. (collectively "GSK"). Collectively, all of the above will be referred to as "the Parties."

### II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A.     At all relevant times, GlaxoSmithKline LLC, a Delaware Limited Liability Company, had business operations in Philadelphia, Pennsylvania and Research Triangle Park, North Carolina. SB Pharmco Puerto Rico, Inc. ("SB Pharmco") was a corporation organized under the laws of the Commonwealth of Puerto Rico with a principal place of business in Cidra, Puerto Rico. SB Pharmco was an indirect subsidiary of GlaxoSmithKline LLC's UK-based parent corporation, GlaxoSmithKline, plc.

B.     At all relevant times, GSK manufactured, distributed, and sold pharmaceutical

1



products in the United States, including drug products sold under the trade names of Paxil CR, Avandamet, Kytril and Bactroban that were manufactured at SB Pharmco's Cidra, Puerto Rico facility. (the "Covered Drugs")

       C.      On or about February 25, 2004, Cheryl Eckard ("Eckard") ("Relator") filed a qui tam action in the United States District Court for the District of Massachusetts captioned United States of America ex rel. Cheryl Eckard v. GlaxoSmithKline, et al., Civil Action No. 04-10375 (D. Mass.). On or about October 17, 2008, Eckard filed a Third Amended Complaint in the District of Massachusetts under the same case number and captioned United States of America, et al. ex rel. Cheryl Eckard v. SmithKline Beecham d/b/a GlaxoSmithKline, et al., and this Third Amended Complaint sets forth the current allegations in the qui tam action ("the Civil Action");

       D.      On such date as may be determined by the Court, SB Pharmco will enter a plea of guilty, pursuant to Fed. R.Crim. P. 11(c)(1)(C) (the "Plea Agreement") to an Information to be filed in United States v. GlaxoSmithKline, Criminal Action No. [to be assigned] (District of Massachusetts) (the "Federal Criminal Action") that will allege a violation of Title 21, United States Code, Sections 331(a), 333(a)(2), and 351(a)(2)(B), namely, the introduction into interstate commerce, of adulterated drugs Avandamet, Paxil CR, Bactroban and Kytril, in violation of the Food, Drug and Cosmetic Act ("FDCA").

       E.      GSK will be entering into separate settlement agreements, described in Paragraph 1(b) below (hereinafter referred to as the "Medicaid State Settlement Agreements") with certain states and the District of Columbia in settlement of the Covered Conduct. States with which GSK executes a Medicaid State Settlement Agreement in the form to which GSK and the

2

National Association of Medicaid Fraud Control Units ("NAMFCU") have agreed, or in a form

otherwise agreed to by GSK and an individual state, shall be defined as "Medicaid Participating

States."

      F.     The United States alleges that GSK caused to be submitted claims for payment for

the Covered Drugs to the Medicaid Program, Title XIX of the Social Security Act, 42 U.S.C. §§

1396-1396v ("the Medicaid Program").

      G.     The United States further alleges that GSK caused claims for payment for the

Covered Drugs to be submitted to the TRICARE program (formerly known as the Civilian

Health and Medical Program of the Uniformed Services), 10 U.S.C. §§ 1071-1109; the Federal

Employees Health Benefits Program ("FEHBP"), 5 U.S.C. §§ 8901-8914; and caused purchases

of the Covered Drugs by the Department of Veterans Affairs ("VA") (collectively, the "other

Federal health care programs").

      H.     The United States contends that it and the Medicaid Participating States have

certain civil claims against GSK, as specified in Paragraph 2 below, for engaging in the

following conduct concerning the manufacture, distribution, and sale of the Covered Drugs that

were manufactured at SB Pharmco's Cidra, Puerto Rico facility, at various points during the time

period January 1, 2001 through April 1, 2005 (hereinafter referred to as the "Covered Conduct"):

      GSK knowingly manufactured, distributed and sold in interstate commerce certain
batches, lots, or portions of lots of the Covered Drugs during the period referenced
above, the strength of which differed from, or the purity or quality of which fell below,
the strength, purity, or quality specified in the drugs' FDA-approved New Drug
Applications ("NDAs") or documents related to the drugs' NDAs, the drugs' labels
and/or the standards set forth in the United States Pharmacopeia, in violation of the
Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C.§ 351(b) and (c), which
deems such products to be "adulterated," and 21 U.S.C. § 331(a).

      More specifically, GSK knowingly manufactured, distributed and sold certain batches,

3

lots, or portions of lots of: (1) Paxil CR that contained some split tablets causing some consumers to receive either product with no active ingredient and/or product with only the active ingredient layer and no controlled release mechanism; (2) Avandamet that contained some tablets with higher or lower amounts of rosiglitazone than specified; (3) Kytril that was labeled as sterile but was, in some vials, non-sterile; and (4) Bactroban ointments and creams that, in some packages, contained microorganisms.

As a result of the foregoing alleged conduct, the United States contends that GSK sold certain batches, lots, or portions of lots of the Covered Drugs, the strength of which materially differed from, or the purity or quality of which materially fell below, the strength, purity, or quality specified in the drugs' NDAs or related documents as described above, and thereby knowingly caused false and/or fraudulent claims to be submitted to, or caused purchases by, the Medicaid Program and the other Federal health care programs.

I.      The United States also contends that it has certain administrative claims against GSK as specified in Paragraphs 3 through 5 below, for engaging in the Covered Conduct;

J.      This Settlement Agreement is made in compromise of disputed claims. This Settlement Agreement is neither an admission of facts or liability by GSK, nor a concession by the United States or the Relator that their claims are not well-founded. GSK expressly denies the contentions and allegations of the United States and Relator as set forth herein and in the Civil Action and denies that it engaged in any wrongful conduct, except as to such admissions that SB Pharmco is required to make under the terms of the plea agreement, into which SB Pharmco is entering simultaneously with the execution of this Settlement Agreement. Neither this Settlement Agreement, its execution, nor the performance of any obligation arising under it, including any payment, nor the fact of settlement is intended to be, or shall be understood as, an admission of liability or wrongdoing, or other expression reflecting on the merits of the dispute by GSK.

K.      To avoid the delay, expense, inconvenience, and uncertainty of protracted litigation of these claims, the Parties mutually desire to reach a full and final settlement as set

4

forth below.

### III.  TERMS AND CONDITIONS

NOW, THEREFORE, in reliance on the representations contained herein and in consideration of the mutual promises, covenants, and obligations set forth below in this Agreement, and for good and valuable consideration as stated herein, the Parties agree as follows:

1.    GSK agrees to pay to the United States and the Medicaid Participating States the sum of Six Hundred Million Dollars ($600,000,000) plus accrued interest in an amount of 3.25% per annum from June 18, 2010 and continuing until and including the day before payment is made under this Agreement (collectively, the "Settlement Amount"). The Settlement Amount shall constitute a debt immediately due and owing to the United States and the Medicaid Participating States on the Effective Date of this Agreement. The debt shall be discharged by payments to the United States and the Medicaid Participating States, under the following terms and conditions:

(a)    The Federal Settlement Amount of Four Hundred Thirty Six Million Four Hundred Forty Thousand Dollars ($436,440,000) plus accrued interest in an amount of 3.25% per annum from June 18, 2010, and continuing until and including the day before payment is made under this Agreement, shall be paid by electronic funds transfer pursuant to written instructions to be provided by the United States. GSK shall make this electronic funds transfer no later than seven (7) business days after (i) the Effective Date of this Agreement or (ii) the Court accepts a Fed. R. Crim. P. 11(c)(1)(C) guilty plea in connection with

5

the Federal Criminal Action and imposes the agreed-upon sentence, whichever occurs later.

(b)      GSK shall pay to the Medicaid Participating States the Medicaid State Settlement Amount of One Hundred Sixty-Three Million Five Hundred and Sixty Thousand Dollars ($163,560,000), plus interest accrued on this amount at the rate of 3.25 percent per annum from June 18, 2010, continuing until and including the day before payment is made ("Medicaid State Settlement Amount"). The Medicaid State Settlement Amount shall be paid by electronic funds transfer to an interest bearing account in accordance with the written instructions from the NAMFCU Negotiating Team pursuant to the terms and conditions agreed upon by GSK and the NAMFCU Negotiating Team and as set forth in the Medicaid State Settlement Agreements that GSK will enter into with the Medicaid Participating States.

(c)      Contingent upon the United States receiving the Federal Settlement Amount from GSK, the United States agrees to pay, as soon as feasible after receipt, to Relator Eckard a Relator's Share of 22% of the Federal Settlement Amount referred to in subparagraph (a) of this paragraph equal to $96,016,800 plus the pro rata share of the actual accrued interest paid to the United States by GSK on the amount set forth in Paragraph 1 above ("Relator's Share").

2.      Subject to the exceptions in Paragraph 6 (concerning excluded claims), below, in consideration of the obligations of GSK set forth in this Agreement, conditioned upon GSK's payment in full of the Settlement Amount, the United States (on behalf of itself, its

officers, agents, agencies, and departments) agrees to release GSK, together with its predecessors, current and former parents, direct and indirect affiliates, divisions, subsidiaries, successors, transferees, heirs, and assigns, and their current and former directors, officers and employees, individually and collectively, from any civil or administrative monetary claim the United States has or may have for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. §§ 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties for which the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R., Part 0, Subpart I, 0,45(d); and common law claims of payment by mistake, fraud, disgorgement, unjust enrichment and, if applicable, breach of contract.

3.     OIG-HHS expressly reserves all rights to institute, direct, or to maintain any administrative action seeking exclusion against GSK and/or its officers, directors, and employees from Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) under 42 U.S.C. § 1320a-7(a) (mandatory exclusion), or 42 U.S.C. § 1320a-7(b) or 42 U.S.C. § 1320a-7a (permissive exclusion).

4.     OPM expressly reserves all rights to institute, direct, or to maintain any administrative action seeking debarment against GSK from the FEHBP under 5 U.S.C. § 8902(b) (mandatory debarment), or (c) and (d) (permissive debarment).

5.     TMA expressly reserves all rights to institute, direct, or to maintain any administrative action seeking exclusion against GSK and/or its officers, directors, and employees from the TRICARE Program under 32 C.F.R. §§ 199.9.

7

6.    Notwithstanding any term of this Agreement, specifically removed and excluded from the scope and terms of this Agreement as to any entity or person (including GSK and the Relator) are the following claims of the United States:

(a)    Any civil, criminal or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code);

(b)    Any criminal liability;

(c)    Except as explicitly stated in this agreement, any administrative liability including mandatory or permissive exclusion from Federal health care programs and debarment.

(d)    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

(e)    Any liability based upon such obligations as are created by this Agreement;

(f)    Any liability for express or implied warranty claims or other claims for deficient services;

(g)    Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;

(h)    Any liability for failure to deliver services due; and

(i)    Any liability of individuals (including current or former directors, officers, employees or agents of GSK) who receive written notification that they are the target of a criminal investigation, are criminally indicted, charged, or convicted, or who enter a criminal plea agreement arising from the Covered Conduct.

7.     The Relator, and her respective heirs, successors, attorneys, agents, and assigns, agrees not to object to this Agreement and agrees and confirms that this Agreement is fair, adequate and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B), and expressly waives the opportunity to request a hearing on any objection to this Agreement pursuant to 31 U.S.C. § 3730(c)(2)(B).  Conditioned upon payment by the United States of the amounts set forth in Paragraph 1(c) above, the Relator for herself individually, and for her heirs, successors, agents, and assigns, fully and finally releases, waives, and forever discharges the United States, its officers, agents, and employees, from any claims arising from or relating to 31 U.S.C. § 3730; from any claims arising from the Covered Conduct and/or the filing of her Civil Action; and from any other claims for a share of the Federal Settlement Amount; and in full settlement of any claims the Relator may have under this Agreement.  This Agreement does not resolve or in any manner affect any claims the United States has or may have against the Relator arising under Title 26, U.S. Code (Internal Revenue Code), or any claims arising under this Agreement.  Relator does not release the Medicaid Participating States from any claims that Relator has for a share of any settlement or judgment obtained by the Medicaid Participating States concerning the Covered Conduct.

8.     In consideration of the obligations of GSK set forth in this Agreement, and conditioned upon receipt of the payments described in Paragraph 1(c) above, the Relator, for herself, and her heirs, successors, attorneys, agents, assigns, and any other person or entity acting on her behalf or asserting her rights, hereby fully and finally releases, waives and forever discharges GSK, together with its predecessors, current and former parents, direct and indirect affiliates, divisions, subsidiaries, successors, transferees, heirs, and assigns, and their current and

9

former directors, officers and employees, individually and collectively from any and all liability, claims, allegations, demands, actions or causes of action whatsoever, known or unknown, fixed or contingent, in law or in equity, in contract or tort, under any federal or state statute or regulation, or under common law or that the Relator otherwise would have standing to bring, arising from or relating to the Covered Conduct and that the Relator asserted or could have asserted in, or arising from or relating to, the Civil Action.  Provided, however, that the Relator does not release GSK for any claims for attorneys' fees, expenses and costs under 31 U.S.C. § 3730(d).

   9.  GSK waives and shall not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this Paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

   10.  GSK fully and finally releases, waives and discharges the United States, its agencies, employees, servants, and agents from any claims (including attorneys' fees, costs, and expense of every kind and however denominated) which GSK has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the United States' investigation and prosecution of civil claims arising out of or in connection with the Civil Action.

10

11.     In consideration of the obligations of the Relator set forth in this Agreement, GSK, on behalf of itself, its predecessors, and its current and former divisions, parents, subsidiaries, agents, successors, assigns, and their current and former directors, officers and employees, fully and finally releases, waives, and forever discharges the Relator and her respective heirs, successors, assigns, agents, and attorneys from any claims or allegations GSK has asserted or could have asserted arising from the Covered Conduct or related to the initiation, investigation, and/or prosecution of the Civil Action by Relator and her attorneys.  Provided, however, that GSK expressly reserves any defenses or claims with respect to Relator's claim for attorneys' fees, expenses, and costs under 31 U.S.C. § 3730(d), which is reserved pursuant to Paragraph 8 above.

12.     Neither the Federal Settlement Amount nor the Medicaid State Settlement Amount shall be decreased as a result of the denial of claims for payment now being withheld from payment by any state or federal payer, related to the Covered Conduct; and GSK agrees not to resubmit to any Medicare carrier or intermediary or any state payer any previously denied claims related to the Covered Conduct, and agrees not to appeal (or cause the appeal of) any such denial of claims.

13.     GSK agrees to the following:

(a)     Unallowable Costs Defined: that all costs (as defined in the Federal Acquisition Regulations ("FAR") 48 C.F.R. § 31.205-47 and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg and 1396-1396v, and the regulations and official program directives promulgated thereunder) incurred by or on behalf of GSK, its present or former officers, directors, employees,

11

shareholders, and agents in connection with the following shall be "Unallowable Costs" on government contracts and under the Medicare Program, Medicaid Program, and TRICARE Program:

(1)     the matters covered by this Agreement and the related plea agreement;

(2)     the United States' audit and civil and criminal investigation of the matters covered by this Agreement;

(3)     GSK's investigation, defense, and any corrective actions undertaken in response to the United States' audit and civil and criminal investigation in connection with the matters covered by this Agreement (including attorneys' fees);

(4)     the negotiation and performance of this Agreement, the plea agreement, and the Medicaid State Settlement Agreements;

(5)     the payments GSK makes to the United States or any State pursuant to this Agreement, the plea agreement, or the Medicaid State Settlement Agreements and any payments that GSK may make to the Relator; and

All costs described or set forth in this Paragraph 13(a) are hereafter "Unallowable Costs."

(b)     Future Treatment of Unallowable Costs: These Unallowable Costs shall be separately determined and accounted for by GSK, and GSK shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid Program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by GSK or any of its parents, subsidiaries or affiliates to the Medicare,

12

Medicaid, or TRICARE Programs.

(c)     Treatment of Unallowable Costs Previously Submitted for Payment: GSK

further agrees that within 90 days of the Effective Date of this Agreement, it shall

identify to applicable Medicare and TRICARE fiscal intermediaries, carriers,

and/or contractors, and Medicaid and VA fiscal agents, any Unallowable costs (as

defined in this Paragraph) included in payments previously sought from the

United States, or any State Medicaid Program, including, but not limited to,

payments sought in any cost reports, cost statements, information reports, or

payment requests already submitted by GSK or any of its subsidiaries or affiliates,

and shall request, and agree, that such cost reports, cost statements, information

reports, or payment requests, even if already settled, be adjusted to account for the

effect of the inclusion of the Unallowable Costs.  GSK agrees that the United

States, at a minimum, shall be entitled to recoup from GSK any overpayment plus

applicable interest and penalties as a result of the inclusion of such Unallowable

Costs on previously-submitted cost reports, information reports, cost statements,

or requests for payment.  Any payments due after the adjustments have been made

shall be paid to the United States pursuant to the direction of the Department of

Justice and/or the affected agencies.  The United States reserves its rights to

disagree with any calculations submitted by GSK or any of its subsidiaries or

affiliates on the effect of inclusion of Unallowable Costs (as defined in this

Paragraph) on GSK or any of its subsidiaries' or affiliates' cost reports, cost

statements, or information reports.

13

(d)     Nothing in this Agreement shall constitute a waiver of the rights of the United States to examine or reexamine GSK's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

14.     GSK agrees to cooperate fully and truthfully with the United States' investigation relating to the Covered Conduct of individuals and entities not released in this Agreement. Upon reasonable notice, GSK shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. GSK agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by its counsel or agent.

15.     This Agreement is intended to be for the benefit of the Parties only. Other than as set forth in this Agreement, the Parties do not release any claims against any other person or entity.

16.     GSK agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payers based upon the claims defined in the Covered Conduct.

17.     GlaxoSmithKline LLC expressly warrants that is has reviewed its financial situation and that it is currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and

14

548(a)(1)(B)(ii)(I), and will remain solvent following payment of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants and obligations set forth herein constitute a contemporaneous exchange for new value given to GlaxoSmithKline LLC, within the meaning of 11 U.S.C. § 547(c)(1); and (b) conclude that these mutual promises, covenants and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties, to the best of their respective knowledge individually, warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which GlaxoSmithKline LLC was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

18.    The United States shall intervene in the Civil Action as to the Covered Conduct and consent to the voluntary dismissal as to GSK and all other defendants and all other allegations set forth in the Civil Action. Within five (5) business days following payment of the Settlement Amount, the United States and Relator shall file a stipulation of dismissal in the Civil Action as follows:

        (a)    the stipulation of dismissal shall be with prejudice as to the United States' and Relator's claims as to GSK and all other defendants as to the Covered Conduct in the Civil Action pursuant to and consistent with the terms and conditions of this Agreement;

        (b)    the stipulation of dismissal shall be without prejudice as to the United States and with prejudice as to the Relator as to GSK and all other

15

defendants and as to all other claims in the Civil Action; and

(c)     provided, however, that the following claims shall not be dismissed,

unless they are settled, any required United States consent is obtained, and

the Court is so informed: (1) Relator's claims for a Relator's Share under

the Medicaid State Settlement Agreements; and (2) Relator's claims for

reasonable attorneys' fees, expenses and costs pursuant to 31 U.S.C. §

3730(d).

19.     Except as expressly provided to the contrary in this Agreement, each party shall

bear its own legal and other costs incurred in connection with this matter, including the

preparation and performance of this Agreement.

20.     The Parties each represent that this Agreement is freely and voluntarily entered

into without any degree of duress or compulsion whatsoever.

21.     This Agreement is governed by the laws of the United States.  The Parties agree

that the exclusive jurisdiction and venue for any dispute arising between and among the Parties

under this Agreement, including any dispute regarding Relator's attorneys' fees, expenses and

costs shall be the United States District Court for the District of Massachusetts.

22.     For purposes of construction, this Agreement shall be deemed to have been

drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party

for that reason in any subsequent dispute.

23.     Except as expressly set forth herein, this Agreement constitutes the complete

agreement between the Parties.  This Agreement may not be amended except by written consent

of all the Parties.

16

24.     The individuals signing this Agreement on behalf of GSK represent and warrant that they are authorized by GSK to execute this Agreement. The individuals signing this Agreement on behalf of the Relator represent and warrant that they are authorized by the Relator to execute this Agreement. The United States' signatories represent that they are signing this Agreement in their official capacities and they are authorized to execute this Agreement.

25.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which shall constitute one and the same Agreement.

26.     This Agreement is binding on GSK's successors, transferees, heirs, and assigns.

27.     This Agreement is binding on the Relator's successors, transferees, heirs, attorneys and assigns.

28.     All Parties consent to the disclosure of this Agreement, and information about this Agreement, to the public.

29.     This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement"). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

30.     Notwithstanding any provision of this Agreement, if the guilty plea referenced in Paragraph II(D) is not accepted by the Court or the Court does not impose the agreed upon sentence for whatever reason, this Agreement shall be null and void at the option of either the United States or GSK. If either the United States or GSK exercises this option, which option shall be exercised by notifying all Parties, through counsel, in writing within five (5) business days of the Court's decision, the Parties will not object and this Agreement will be rescinded. If the Agreement is rescinded, the calculation of any statute of limitations period for any civil or

administrative claims brought by the United States arising from the Civil Action shall not include the period from the Effective Date through ninety (90) days after the date of the rescission.

[page intentionally left blank]

UNITED STATES OF AMERICA

CARMEN M. ORTIZ
U.S. Attorney, District of Massachusetts

By:          *Susan D. Winkler*

            *Shannon T. Kelley*          Dated:  10 | 26 | 10

SHANNON T. KELLEY
SUSAN G. WINKLER
Assistant U.S. Attorneys
United States Attorney's Office
District of Massachusetts

20

UNITED STATES OF AMERICA

TONY WEST
Assistant Attorney General

By: _____          Dated: 10/26/10

JOYCE R. BRANDA
JAMIE ANN YAVELBERG
Attorneys
Commercial Litigation Branch, Civil Division
United States Department of Justice

By:

Dated: 10/25/10

GREGORY E. DEMSKE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Department of Health and Human Services

By: _____     Dated: *Octder 25, 2010*

ROBERT D. SEAMAN
General Counsel
TRICARE Management Activity
United States Department of Defense
On Behalf of the TRICARE Program

23

By:       _____       Dated: 10/21/10
               SHIRLEY R. PATTERSON
               Acting Deputy Associate Director
               Insurance Operations
               United States Office of Personnel Management

By:       _____       Dated: 10/28/2010
               J. DAVID COPE
               Assistant Inspector General for Legal Affairs
               United States Office of Personnel Management

24

**GLAXOSMITHKLINE LLC**

By: _____       Dated: 10/26/10

Elpidio Villarreal
Senior Vice President
Global Litigation
GlaxoSmithKline LLC

By: _____       Dated: 10/06/10

Geoffrey E. Hobart, Esq.
Matthew J. O'Connor, Esq.
Covington & Burling LLP
Counsel for GlaxoSmithKline LLC

25

**THE RELATOR**

By: _Cheryl Eckard_   Dated: Oct 26, 2010
Cheryl Eckard
Relator

By: _Neil V. Getnick_   Dated: 10/26/10
Neil V. Getnick
Lesley Ann Skillen
Getnick & Getnick, LLP
Counsel for Relator